# No. 25-60141

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States of America,

Plaintiff - Appellee

v.

Jarvin Summerall,

Defendant - Appellant

## On Appeal from
United States District Court for the Southern District of Mississippi

2:22-CR-14-1

## BRIEF OF APPELLANT JARVIN SUMMERALL

SUBMITTED BY:

Andrew Arman Miri
Lowrey & Fortner, P.A.
525 Corinne Street
Hattiesburg, MS 39401

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| United States of America | Adam Stuart of U.S. Attorney's Office Jackson, MS |

| Appellants: | Counsel for Appellants: |
|---|---|
| Jarvin Summerall | Andrew Miri of Lowrey & Fortner, P.A. Hattiesburg, MS |

| Other Interested Parties: | Counsel for Interested Parties: |
|---|---|
| None | None |
|  |  |
|  |  |

S/Andrew Arman Miri
Attorney of record for
Jarvin Summerall

# STATEMENT REGARDING ORAL ARGUMENT

Appellant Jarvin Summerall respectfully requests oral argument. The issues presented in this appeal, including the enforceability of the appellate waiver, erroneous applications of sentencing guidelines under U.S.S.G. §§ 3B1.1(a), 2D1.1(b)(12), and 2D1.1(b)(1), the substantive unreasonableness of the 400-month sentence, and the denial of an acceptance-of-responsibility reduction under U.S.S.G. § 3E1.1, involve complex factual and legal determinations that would benefit from oral presentation to clarify the record, address potential circuit precedents, and ensure a thorough exploration of the arguments. Oral argument will assist the Court in resolving these multifaceted sentencing challenges efficiently and justly.

# TABLE OF CONTENTS

Contents                                                              Page(s)

CERTIFICATE OF INTERESTED PERSONS ....................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF CONTENTS.......................................................................................... iv

TABLE OF AUTHORITIES ...................................................................................1

JURISDICTIONAL STATEMENT ..........................................................................3

STATEMENT OF THE ISSUES...............................................................................3

STATEMENT OF THE CASE...................................................................................4

SUMMARY OF THE ARGUMENT ........................................................................4

ARGUMENT .............................................................................................................5

CONCLUSION........................................................................................................30

CERTIFICATE OF SERVICE ...............................................................................31

CERTIFICATE OF COMPLIANCE.......................................................................32

# TABLE OF AUTHORITIES

**Cases**………………………………………………………………**Pages(s)**

*Beckles v. United States,* 580 U.S. 256 (2017) ........................................................28

*Bousley v. United States*, 523 U.S. 614 (1998)..........................................................7

*Gall v. United States*, 552 U.S. 38 (2007).............................................................7, 20

*Garza v. Idaho*, 586 U.S. 232 (2019).......................................................................6

*Holguin-Hernandez v. United States,* 140 S. Ct. 762 (2020)....................................20

*Johnson v. United States,* 576 U.S. 591 (2015).......................................................28

*Mistretta v. United States,* 488 U.S. 361 (1989).....................................................29

*Ramos v. Louisiana,* 590 U.S. 83 (2020).............................................................27, 28

*Roe v. Flores-Ortega*, 528 U.S. 470 (2000)..............................................................6

*Sessions v. Dimaya,* 584 U.S. 148 (2018)..............................................................28

*Spears v. United States*, 555 U.S. 261 (2009)........................................................24

*Stinson v. United States*, 508 U.S. 36 (1993).........................................................29

*United States v. Aguilera-Zapata*, 901 F.2d 1209 (5th Cir. 1990)............................20

*United States v. Akins*, 746 F.3d 590 (5th Cir. 2014)................................................7

*United States v. Anderson,* 5 F.3d 795 (5th Cir. 1993)............................................29

*United States v. Arteaga-Rios,* 762 F. App'x 177 (5th Cir. 2019)..............................26

*United States v. Barbontin*, 907 F.2d 1494 (5th Cir. 1990).......................................9

*United States v. Bell*, 2025 WL 655802 (5th Cir. Feb. 28, 2025)…............................26

*United States v. Castillo*, 77 F.3d 1480 (5th Cir. 1996).............................................18

*United States v. Celestin*, 2023 WL 2018004 (E.D. La. Feb. 15, 2023)……………22

*United States v. Cisneros,* 414 F. App'x 696 (5th Cir. 2011).................................9, 10

*United States v. Cooks*, 589 F.3d 173 (5th Cir. 2009)..............................................25

*United States v. Cooper*, 274 F.3d 230 (5th Cir. 2001).......................................10, 20

*United States v. Cortez-Gonzalez*, 929 F.3d 200 (5th Cir. 2019).............................14

*United States v. Davis*, 226 F.3d 346 (5th Cir. 2000)...............................................11

*United States v. Devaney,* 2024 WL 195555 (5th Cir. Jan. 18, 2024)...............24, 29

*United States v. Eastland*, 989 F.2d 760 (5th Cir. 1993).........................................17

*United States v. Gentry*, 941 F.3d 767 (5th Cir. 2019)...........................................8, 9

*United States v. Guzman-Reyes*, 853 F.3d 260 (5th Cir. 2017)................................12

*United States v. Haines*, 803 F.3d 713 (5th Cir. 2015)............................................12

*United States v. Harris*, 702 F.3d 226 (5th Cir. 2012).............................................13

*United States v. Henderson*, 72 F.3d 463 (5th Cir. 1995).........................................6

*United States v. Hooten*, 942 F.2d 878 (5th Cir. 1991)......................................18, 20

*United States v. Juarez-Duarte,* 513 F.3d 204 (5th Cir. 2008)................................25

*United States v. Kim*, 988 F.3d 803 (5th Cir. 2021)...............................................5, 6
*United States v. Lara*, 23 F.4th 459 (5th Cir. 2022)....................................................21
*United States v. Leal*, 933 F.3d 426 (5th Cir. 2019)...................................................6,7
*United States v. Lewis*, 476 F.3d 369 (5th Cir. 2007).............................................9, 10
*United States v. Lord*, 915 F.3d 1009 (5th Cir. 2019).........................................13, 25
*United States v. Maloof*, 205 F.3d 819 (5th Cir. 2000)................................................9
*United States v. Martinez*, 131 F.4th 294 (5th Cir. 2025).....................................8, 12
*United States v. Mendez-Becerra,* 745 F. App'x 240 (5th Cir. 2018).......................26
*United States v. McKinney*, 520 F.3d 425 (5th Cir. 2008)...........................................6
*United States v. Najera*, 915 F.3d 997 (5th Cir. 2019).............................................29
*United States v. Nyandoro*, 2025 WL 1710542 (5th Cir. Apr. 18, 2025)...................7
*United States v. Ronning*, 47 F.3d 710 (5th Cir. 1995)..............................................10
*United States v. Serfass*, 684 F.3d 548 (5th Cir. 2012) ............................................14
*United States v. Tavberidze*, 769 F. Supp. 3d 264 (S.D.N.Y. 2025)....................27,28
*United States v. Tuma*, 738 F.3d 681 (5th Cir. 2013)..........................................11, 12
*United States v. Turner*, 319 F.3d 716 (5th Cir. 2003)................................................9
*United States v. Vasquez*, 874 F.2d 250 (5th Cir. 1989)............................................19
*United States v. Villanueva,* 408 F.3d 193 (5th Cir. 2005) (2007)...........................13
*United States v.* Watkins, 911 F.2d 983 (5th Cir. 1990).............................................26
*United States v. West*, 138 F.4th 357 (5th Cir. 2025)..............................................6, 7
*United States v. Zapata-Lara*, 615 F.3d 388 (5th Cir. 2010)....................................19

**Statutes**...................................................................................................Page(s)
18 U.S.C. § 3553(a)……………………………………………………………..*passim*
Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 6(2), 124 Stat. 2372 (2010)........................................................................................................14

**Other Authorities**
U.S. Sentencing Guidelines Manual § 2D1.1 (U.S. Sent'g Comm'n 2018)......*passim*
U.S. Sentencing Guidelines Manual § 3B1.1 (U.S. Sent'g Comm'n 2018).......*passim*
U.S. Sentencing Comm'n, Supplement to the 2010 Guidelines Manual, § 2D1.1(b)(12) (Nov. 1, 2010)..................................................................................14
U.S. Sent'g Comm'n, Final Priorities for Amendment Cycle, 88 Fed. Reg. 60,536 (Sept. 1, 2023).................................................................................................23
U.S. Dep't of Just. Drug Enf't Admin., 2025 National Drug Threat Assessment (2025),https://www.dea.gov/sites/default/files/2025-07/2025NationalDrugThreatAssessment.pdf………………………………….....23

# JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. §1291, as this is an appeal from a final judgment of conviction and sentence entered by the United States District Court for the Southern District of Mississippi on October 19, 2023 (ROA. 11-12, 378). The district court had jurisdiction under 18 U.S.C. §3231, as the case involves offenses against the United States (21 U.S.C. §846). The notice of appeal was timely filed following the district court's grant of an out-of-time appeal on March 18, 2025. (ROA. 14, 174-184), pursuant to 28 U.S.C. §2107 and FED. R. APP. P. 4(b).

# STATEMENT OF THE ISSUES

1. Whether the appellate waiver bars this appeal due to ineffective assistance of counsel or erroneous guideline applications.

2. Whether the district court erred in applying the four-level leadership role enhancement under USSG §3B1.1(a).

3. Whether the district court erred in applying the two-level premises enhancement under USSG §2D1.1(b)(12).

4. Whether the district court erred in applying the two-level firearm enhancement under USSG §2D1.1(b)(1).

5. Whether the 400-month sentence is substantively unreasonable due to the methamphetamine (actual) vs. mixture disparity and inadequate §3553(a) consideration.

6. Whether the district court erred in Court Erred in Denying a Reduction for Acceptance of Responsibility Under U.S.S.G. § 3E1.1

# STATEMENT OF THE CASE

Jarvin Summerall was charged in a six-count superseding indictment on November 16, 2022, for conspiracy to possess with intent to distribute methamphetamine (21 U.S.C. §846) and related offenses (ROA. 336). On May 31, 2023, he pled guilty to Counts 3s (≥50g methamphetamine) and 5s (≥5g methamphetamine) pursuant to a plea agreement (ROA. 319–332). The PSR calculated a base offense level of 36 based on 1.5–4.5 kg of methamphetamine (actual), with enhancements for firearm possession (+2, USSG §2D1.1(b)(1)), leadership role (+4, USSG §3B1.1(a)), importation (+2, USSG §2D1.1(b)(5)), and premises maintenance (+2, USSG §2D1.1(b)(12)), yielding a total offense level of 43 (capped from 46) and Criminal History Category III (ROA. 357). The guideline range was life, but the district court varied downward to 400 months on Count 3s, concurrent with Count 5s, on October 19, 2023 (ROA. 378). Summerall appeals, alleging erroneous guideline applications and an unreasonable sentence.

# SUMMARY OF THE ARGUMENT

Summerall's appeal is not barred by the plea agreement's waiver due to ineffective assistance of counsel and erroneous guideline applications. The district court erred in applying the four-level leadership enhancement (USSG §3B1.1(a)), as the conspiracy involved only three participants, not five, and lacked evidence of

Summerall's control or an extensive operation. The two-level premises enhancement (USSG §2D1.1(b)(12)) was improper, as Summerall had access to, but did not maintain, the drug distribution premises. The firearm enhancement (USSG §2D1.1(b)(1)) lacked sufficient temporal and spatial connection to the offense and its application to the sentence was improper. The 400-month sentence is substantively unreasonable due to the unwarranted disparity between methamphetamine (actual) and mixture guidelines, lack of empirical basis for the disparity, and inadequate consideration of §3553(a) factors, including family support and co-defendant disparities. Lastly, the district court erred in denying the acceptance-of-responsibility reduction, as the uncharged verbal incident does not negate Summerall's plea-based remorse.

# ARGUMENT

## I. The Appellate Waiver Does Not Bar This Appeal

This Court reviews de novo whether an appellate waiver bars an appeal. *United States v. Kim*, 988 F.3d 803, 808 (5th Cir. 2021). Summerall's plea agreement waives his right to appeal except for sentences exceeding the statutory maximum, erroneous guideline applications, ineffective assistance of counsel, and plea voluntariness (ROA. 319–332). Counsel's failure to file a direct appeal despite Summerall's request constitutes ineffective assistance, as confirmed by the district

court's grant of an "out-of-time appeal" (ROA. 174-184). *See Roe v. Flores-Ortega*, 528 U.S. 470, 483–84 (2000) (failure to file requested appeal is deficient and presumptively prejudicial). This deficiency undermines the waiver's enforceability, as it deprived Summerall of the opportunity to challenge an erroneous sentence. *See United States v. Henderson*, 72 F.3d 463, 465 (5th Cir. 1995) (waiver unenforceable if plea is involuntary due to ineffective assistance). Summerall's plea was knowing and voluntary (ROA. 332), but counsel's failure to appeal rendered it fundamentally unfair, warranting review. *See Garza v. Idaho*, 586 U.S. 232, 242-43 (2019).

Even if the waiver is enforceable, the issues raised fall within its exceptions or implicate fundamental fairness. This Court applies a two-step inquiry: (1) whether the waiver was knowing and voluntary, and (2) whether it applies to the circumstances under the plea agreement's plain language. *Kim*, 988 F.3d at 808. The leadership role, premises, firearm enhancement and drug quantity challenges fall within the exception for erroneous guideline applications, as they contest U.S.S.G. . §§ 3B1.1(a), 2D1.1(b)(12), and 2D1.1(b)(1) (ROA. 355). *See United States v. McKinney*, 520 F.3d 425, 430 (5th Cir. 2008). These errors, if uncorrected, render the sentence "illegal" by inflating the guideline range, akin to a restitution order lacking proper analysis. *See United States v. West*, 138 F.4th 357, 358–61 (5th Cir. 2025) (citing *United States v. Leal*, 933 F.3d 426, 430–31 (5th Cir. 2019)).

If the substantive reasonableness challenge falls outside the guideline exception, enforcing the waiver would cause a miscarriage of justice. The 400-month sentence, driven by erroneous enhancements and inadequate consideration of § 3553(a) factors (e.g., family support, disparity with co-defendants' sentences), is disproportionately severe. *See Gall v. United States*, 552 U.S. 38, 51 (2007) (failure to consider § 3553(a) is procedural error). Counsel's failure to effectively argue these factors may have exacerbated the error, reinforcing the unfairness. *See West*, 138 F.4th at 361 (Higginson, J., concurring) (advocating miscarriage-of-justice exception); *Bousley v. United States*, 523 U.S. 614, 626 (1998) (Stevens, J., concurring in part and dissenting in part). Unlike *United States v. Nyandoro*, No. 23-10446, 2025 WL 1710542, at *10 (5th Cir. Apr. 18, 2025), which rejected a miscarriage-of-justice exception for constitutional challenges, this case involves procedural sentencing errors, aligning with *West* and *Leal*.

## II. The District Court Erred in Applying the Four-Level Leadership Role Enhancement Under U.S.S.G. § 3B1.1(a)

### A. Standard of Review

This Court reviews the reasonableness of a district court's sentencing decisions under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 46 (2007). The district court's interpretation or application of the Sentencing Guidelines is reviewed de novo, while factual findings are reviewed for clear error. *United States v. Akins*, 746 F.3d 590, 598–99 (5th Cir. 2014).

The Sentencing Guidelines apply a four-level enhancement if the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). A "participant" is "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, cmt. n.1. The Government must prove participants' involvement by a preponderance of reliable evidence. *United States v. Martinez*, 131 F.4th 294, 320 (5th Cir. 2025) (citing *United States v. Gentry*, 941 F.3d 767, 788 (5th Cir. 2019)). The Guidelines provide several factors for courts to consider when making the "organizer or leader" evaluation: (1) the exercise of decision-making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature a scope of the illegal activity; and (7) the degree of control and authority exercised over others. USSG § 3B1.1 cmt. n.4.

**B. The District Court Erred in Finding Five or More Participants**

The district court, adopting the PSR, found Summerall led a conspiracy involving five or more participants (ROA. 357). This was clear error, as the record supports only three criminally responsible participants: Summerall, his sister Tara Summerall, and cousin [FNU LNU] (ROA. 336, 339, 340-353). The PSR references co-defendant Sidney Wayne Kirkland (deceased) but provides limited evidence of

his active role in the conspiracy (ROA. 353). Even if Kirkland is counted, the total is four participants, falling short of the five required. *See United States v. Barbontin*, 907 F.2d 1494, 1498 (5th Cir. 1990). The PSR's reliance on unknown or unnamed individuals in the drug trafficking organization (DTO) is speculative. (ROA. 355). This Court rejects participant status absent evidence of criminal involvement. *United States v. Turner*, 319 F.3d 716, 724 (5th Cir. 2003); *United States v. Lewis*, 476 F.3d 369, 377 (5th Cir. 2007) (mere association insufficient). The court erred in relying on the PSR which counted unknown or fictious persons to the Summerall DTO. (ROA. 355). The Fifth Circuit defines participants as people who are criminally responsible for the offense. See § 3B1.1, cmt. n. 1; *United States v. Maloof*, 205 F.3d 819, 830 (5th Cir.), cert. denied, 531 U.S. 873, 121 S.Ct. 176 (2000). *See also*, *United States v. Cisneros*, 414 Fed. Appx. 696, 703 (5th Cir. 2011) (vacating sentence imposed because mere fact defendant called other co-conspirators does not indicate he was their supervisor)(unpublished). Counting customers as participants was clear error. *See United States v. Gentry*, 941 F.3d at 788 (defendant may rebut PSR by showing it is "materially untrue, inaccurate or unreliable"). The record supports only three participants: Summerall, his sister, and cousin. This falls short of the five-participant threshold required and the district court's finding is not plausible, warranting vacatur.

## C. Insufficient Evidence that Summerall Was an Organizer or Leader

The § 3B1.1(a) enhancement requires that the defendant exercised "control or influence over other people." *United States v. Ronning*, 47 F.3d 710, 712 (5th Cir. 1995). The district court found Summerall led the DTO by trafficking pound and ounce quantities of methamphetamine and selling other narcotics in the Hattiesburg area. (ROA. 237). The PSR stated that, "In the case at bar, the defendant directed the actions of his sister and his cousin. Further, he found and facilitated negotiations for sources of supply, determined prices of narcotics, and was the source of supply for other lower-level distributors." (ROA. 355). This finding is clearly erroneous, as the evidence shows coordination and not control. For example, on December 9, 2021, Summerall ensured a buyer sent the correct payment but relied on Tara to prepare the narcotics, indicating shared responsibility (ROA. 355). *See Ronning*, 47 F.3d at 712; *Lewis*, 476 F.3d at 377. This Court requires evidence of directing others' actions, not mere cooperation. *United States v. Cisneros*, 414 F. App'x 696, 703 (5th Cir. 2011). The District Court even inferred as much,

> Well, that's the point I'm making, Mr. Summerall, is you're going to prison, and so your sister, who was taking care of your mom and your aunt, who have health issues, she got pulled into it, and don't get me wrong, *she's an adult and she made the decision to do it*, and that's why I sentenced her and that's why she's going to serve her time. But it's just a shame that she got pulled into it. (ROA. 240). (emphasis added).

Accordingly, as Summerall did not exercise control or influence over the people individuals named and unnamed in this charge, the § 3B1.1(a) enhancement should be vacated.

### D. The District Court Clearly Erred in Finding the Criminal Activity "Otherwise Extensive"

U.S.S.G. § 3B1.1(a) allows the enhancement if the criminal activity was "otherwise extensive," considering "all persons involved during the course of the entire offense," including unknowing participants, and factors such as the scale, duration, and organizational complexity of the scheme. U.S.S.G. § 3B1.1, cmt. n.3; *United States v. Tuma*, 738 F.3d 681, 694 (5th Cir. 2013). Although the district court did not explicitly rely on this prong, its reference to Summerall's coordination with multiple individuals and activities suggests an implicit finding of extensiveness as referenced from the PSR (ROA. 355). This finding is erroneous, as the record lacks evidence of a complex, large-scale operation or essential unwitting participants who without their participation would have undermined the success of the scheme.

"Otherwise extensive" requires more than a small number of participants or routine drug transactions. A criminal activity is "otherwise extensive" if it involved five or more people who "contributed to the success of the scheme." *United States v Davis,* 226 F.3d 346, 360 (5th Cir. 2000). "The district court properly focused on the

number of people involved in the scheme including the unknowing participants ....

These unknowing participants were essential to the crime; without their participation Tuma's activities could not have happened or continued." *Tuma*, 738 F.3d at 694.

In Summerall's case, the conspiracy involved three confirmed participants with no evidence of revenue, formal organization, or unwitting participants which were integral to the success of the scheme. The PSR's wiretap evidence shows ad hoc coordination of drug sales, not a sophisticated enterprise. For example, Summerall's "instructions to deliver drugs" merely reflect typical drug trafficking activities, not the complexity required for extensiveness. *See Martinez*, 131 F.4th at 322. Summerall's DTO conspiracy lacks documented financial gain, organizational hierarchy, or third-party involvement. The absence of such evidence makes the court's implicit extensiveness finding implausible, warranting vacatur.

### III. **The District Court Erred in Applying the Enhancement Under U.S.S.G. §*2D1.1(b)(12).*

#### A. *Standard of review*

"A district court's application of" the two-level premises enhancement found at "§ 2D1.1(b)(12)" of the Guidelines Manual "is a factual finding reviewed for clear error." *United States v. Guzman-Reyes*, 853 F.3d 260, 263 (5th Cir. 2017) (citing *United States v. Haines*, 803 F.3d 713, 744 (5th Cir. 2015)). "[T]he question ... is whether the district court's" application of the premises enhancement" 'is plausible

in light of the record read as a whole.'" *Id.* at 263 (quoting *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005)).

B. *The District Court Improperly Conflated Access to 211 Edna Street, Hattiesburg, MS to Control of the Premises.*

The district court's erred by conflating access with control. (ROA. 340-353). While a PSR "'bears sufficient indicia of reliability to be considered as evidence by the sentencing judge,'" a district court may only adopt the PSR's "facts" "'if those facts have an adequate evidentiary basis with sufficient indicia of reliability.'" *United States v. Harris,* 702 F.3d 226, 230 (5th Cir. 2012). Section 2D1.1(b)(12) applies if the defendant "maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12) (2018). The approach of conflating access with control cannot be squared with § 2D1.1(b)(12)'s plain text. The ordinary meaning of the verb "maintain" requires sustained control over a premises, not merely use of or access to the premises. Here, the available evidence showed only use and access, not control. The district court's application of the premises enhancement thereby ignored the plain language of the Guidelines Manual. By misinterpreting that language, the district court mistook insufficient evidence as dispositive. The enhancement was therefore improper and cannot withstand clear-error review. *See United States v. Lord*, 915 F.3d 1009, 1022 (5th Cir. 2019).

Since neither the Sentencing Commission nor Congress defined the verb "maintain" as it appears in § 2D1.1(b)(12), this Court should interpret the word using its ordinary meaning at the time of enactment. *See United States v. Cortez-Gonzalez,* 929 F.3d 200, 203 (5th Cir. 2019) (quoting *United States v. Serfass*, 684 F.3d 548, 551 (5th Cir. 2012)). In 2010, Congress ordered the Sentencing Commission to add a two-level enhancement for defendants who "maintained an establishment for the manufacture of a controlled substance." Fair Sentencing Act of 2010, Pub. L. 111-220, § 6(2), 124 Stat. 2372, 2373 (Aug. 3, 2010)). The Commission promulgated § 2D1.1(b)(12) in response to this command, and the new specific offense characteristic went into effect on November 1, 2010. U.S. Sentencing Comm'n, Supplement to the 2010 Guidelines Manual, § 2D1.1 (b)(12) (Nov. 1, 2010). The original version applied whenever "the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." *Id.* Congress did not define the term "maintain" in its order to the Commission. Fair Sentencing Act of 2010, § 6(2), 124 Stat. at 2373. The Commissions likewise neglected to adopt a precise definition for the term. *See* U.S. Sentencing Comm'n, Supplement to the 2010 Guidelines Manual, § 2D1.1(b)(12), cmt. n.28 (Nov. 1, 2010). The verb remains undefined today. *See* U.S. Sentencing Comm'n, Supplement to the 2010 Guidelines Manual, § 2D1.1(b)(12), cmt. n.17 (Nov. 1, 2023). As a result, the term's "plain meaning is controlling unless it creates an absurd result." *Cortez-Gonzalez*,

929 F.3d at 203 (quoting *Serfass*, 684 F.3d at 551). Contemporary legal dictionaries defined "maintain" to require sustained control over a premises. The 2009 edition of Black's Law Dictionary, for example, defined the term as follows: "to continue (something)," "to continue in possession of (property, etc.)," "to care for (property) for purposes of operational productivity or appearance," and "to engage in general repair and upkeep." *Maintain*, Black's Law Dictionary (9th ed. 2009). Each of these definitions incorporates into the term's plain meaning requirements of duration, continuity, and control. The current edition of Black's Law Dictionary recognizes the same three requirements and uses identical definitions. *Maintain*, Black's Law Dictionary (11th ed. 2019).

Lay dictionaries also defined "maintain" to require sustained control over a premises, not merely use or access to the premises at issue. In 1980, the second edition of the American Heritage Dictionary of the English Language defined "maintain" as "to continue," "carry on," or "keep up." *Maintain*, The American Heritage Dictionary of the English Language (2d ed. 1980). The same dictionary then provided a series of alternative definitions: "to keep in a condition of good repair or efficiency," "to provide for; bear the expenses of," "to keep in existence; sustain." *Id.* Like Black's Law Dictionary, these definitions incorporate into the plain meaning of "maintain" the requirement of continuous control over the course of time. The verb has the same meaning today. The most recent edition of the American

Heritage Dictionary of the English Language uses almost identical language to define "maintain." *Maintain*, The American Heritage Dictionary of the English Language (5th ed. 2022). The commentary to § 2D1.1(b)(12) tracks the verb's plain meaning. First, the commentary instructs district courts applying the premises enhancement to consider "whether the defendant held a possessory interest (*e.g.*, owned or rented) the property." USSG § 2D1.1 cmt. n.17. The nature of a defendant's possessory interest sheds light on the ability to exercise supervisory control over a place in a way that others cannot. The commentary likewise instructs district courts to consider "the extent to which the defendant-controlled access to, or activities at, the premises." USSG § 2D1.1 cmt. n.17. These factors echo the plain meaning of "maintain" by focusing on the defendant's ability to exercise supervisory control concerning access to the premises and the activities that took place there.

The district court erred by conflating access with control. Mr. Summerall, as the PSR pointed out, met multiple people at "his residence" while only one sale occurred there during surveillance on November 9, 2021. (ROA. 343). With other sales occurring at differing locations. (ROA. 344). Additionally, the PSR details that Mr. Summerall lived next door to the alleged "sale residence." (ROA. 349, 363). While PSR mentions Summerall on calls meeting people at his "residence" we cannot say that access to the home next door, can infer Mr. Summerall's "control

over the premises." (*Id.*) Nor can we say that the residence is 211 Edna Street, next door to 211 Edna Street, or 78 Oak Street, Hattiesburg, MS.

Mr. Summerall's use of the "sale residence" to distribute drugs on few occasions cannot bridge the gap between access and maintenance. The premises owner is the one that is exercising the control and discretion necessary to maintain the home. The district court erred by relying solely on evidence of access and use to apply the maintaining-a-premises enhancement against Mr. Summerall. The PSR premised the enhancement on Mr. Summerall's use of the home on multiple occasions to distribute drugs. (ROA.355). Mr. Summerall himself stated he lives at 78 Oak Street, Hattiesburg, Mississippi, 39401. (ROA. 364). While the PSR attempts to place him living at the "residence" of 211 Edna Street. (ROA. 335). These facts suggest that Mr. Summerall, may have had permission to use and access the house but did not himself exercise the type of control or authority necessary to qualify for the maintaining-a-premises enhancement. The district court's reliance on Summerall's limited use of 211 Edna Street does not meet this standard, warranting vacatur.

## IV. The District Court Erred in Applying the Two-Level Firearm Enhancement Under U.S.S.G. § 2D1.1(b)(1)

### A. Standard of Review

"Because the decision to apply § 2D1.1(b)(1) is a factual one, we review only for clear error." *United States v. Eastland,* 989 F.2d 760, 769 (5th Cir.1993); *see*

*also United States v. Castillo,* 77 F.3d 1480, 1498 (5th Cir.1996) (same). Nonetheless, "we examine de novo the district court's purely legal application of the sentencing guidelines." *United States v. Hooten,* 942 F.2d 878, 881 (5th Cir.1991). The government must prove weapon possession by a preponderance of the evidence, either through personal possession with a temporal and spatial nexus to the drug trafficking offense or reasonably foreseeable coconspirator possession. *Id*. at 881–82; U.S.S.G. § 1B1.3(a)(1)(B) (2018).

C. *The Alleged Firearm Lacks a Spatial and Temporal Nexus to the Trafficking of Narcotics*

Summerall challenges the enhancement because the government failed to establish either that he was personally responsible for a gun or that possession of it was reasonably foreseeable to him, as it relates to drug trafficking activity. The PSR states that Summerall may have carried a firearm to a hospital and that he always carries. (ROA. 355). Before a sentencing court can apply § 2D1.1(b)(1), the government must prove weapon possession by a preponderance of the evidence. *Hooten* at 881. It can do that in two ways. *Id.* at 882. First, it can prove that the defendant personally possessed the weapon, by showing a temporal and spatial relationship of the weapon, the drug trafficking activity, and the defendant. *Id.* To make that showing, the government must provide evidence that the weapon was found in the same location where drugs or drug paraphernalia are stored or where

part of the transaction occurred. *Id.* Generally, the government must provide evidence that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred. *See, e.g., United States v. Zapata-Lara,* 615 F.3d 388, 391 (5th Cir. 2010) (enhancement not supported by record to establish a temporal and spatial relationship and drug trafficking activity.

The district court, adopting the PSR, applied the enhancement based on Summerall's statements about carrying a firearm (ROA. 355).  However, the PSR does not contain sufficient facts establishing a temporal and spatial relationship of the gun, the drug trafficking activity, and Summerall. As to the relationship, a gun was allegedly purchased November 23, 2021, by Summerall. (ROA. 346). While the conduct of trafficking Methamphetamine by Summerall ended three days prior on November 21, 2021. (ROA. 354). The PSR also states the conspiracy extended through December 2021 (ROA. 336). Yet no evidence shows a firearm was present during drug transactions or at locations where drugs were stored (ROA. 340–353). *See United States v. Vasquez*, 874 F.2d 250, 251 (5th Cir. 1989) (no possession where gun was unconnected to drug purchase). This temporal and spatial gap is hardly a textbook case of possessing a dangerous weapon during the commission of a drug-trafficking offense. Likewise, no firearm was seized during Summerall's arrest by federal agents on September 27, 2022.  (ROA. 338). Nor is there any

information about any residence containing a firearm. Ultimately, the statement captured by the wiretap lacks a nexus to trafficking activities. *See United States v. Cooper*, 274 F.3d 230, 245-46 (5th Cir. 2001) (requiring clear nexus to offense).

Alternatively, no evidence shows coconspirators possessed firearms during the offense, precluding foreseeability. *See United States v. Aguilera-Zapata*, 901 F.2d 1209, 1215–16 (5th Cir. 1990). The PSR's reliance on Summerall's general statements about carrying a firearm (ROA. 347) does not establish a connection to specific transactions. *See Hooten*, 942 F.2d at 881–82 (remanding for explicit findings on possession or foreseeability). The enhancement is not plausible in light of the record, warranting vacatur.

### V. The District Court's Sentence was Substantively Unreasonable.

#### A. *Standard of Review*

This Court reviews substantive reasonableness for abuse of discretion, as Summerall preserved the issue by requesting a downward variance at sentencing (ROA. 235). *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766–67 (2020). A sentence must be "sufficient, but not greater than necessary" under 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 50 (2007).

Here, Mr. Summerall asked the district court to depart or vary downward at sentencing based on the guideline's overstatement of his involvement in this matter. (ROA. 235). In response, the district court articulated the 18 U.S.C. § 3553(a) factors

and determined that it would not sentence Mr. Summerall to life, stating : "I do think that your sentence is going to have to be significant given the conduct that you have participated in; however, I do think that a life sentence is greater than necessary to accomplish the purpose of sentencing" (ROA. 241, 246). Mr. Summerall received a 400-month sentence on two charges to run concurrently with one another. (ROA. 241).

B. *The Sentencing Disparity Between Methamphetamine (Actual) and Methamphetamine (Mixture) Results in Substantively Unreasonable Sentences.*

The Sentencing Guidelines establish a ten-to-one variance in punishment for methamphetamine (actual) and methamphetamine (mixture). *See* U.S.S.G. § 2D1.1(c) (Drug Quantity Table) (2018). Mr. Summerall, was held responsible for the following:

| Date | Narcotic | Quantity |
|---|---|---|
| 07/06/2021 | Methamphetamine (Controlled buy) | 47.2 grams |
| 07/13/2021 | Methamphetamine (Controlled buy) | 54.61 grams |
| 09/16/2021 | Methamphetamine (Controlled buy) | 53.6 grams |
| | Methamphetamine (Controlled buy) | 52.8 grams |
| 10/31/2021 | Methamphetamine (sold to "Rock") | 1 pound |
| | Methamphetamine (male in route to purchase from Jarvin) | ¼ pound |
| 11/09/2021 | Methamphetamine (seized from Welborn) | 109.1 grams |
| 11/11/2021 | Methamphetamine (Welborn) | ¼ pound |
| 11/12/2021 | Methamphetamine (Jarvin purchasing) | 1.5 pounds |
| 11/18/2021 | Methamphetamine (Jarvin purchasing) | 1 pound |
| 11/20/2021 | Methamphetamine (Jarvin purchasing) | 1 pound |
| 11/21/2021 | Methamphetamine (Jarvin purchased from "Zoe") | 2 pounds |
| 11/26/2021 | Marijuana (Jarvin purchased several pounds, then later agreed to sell 4-5 pounds to an unknown male) (Jarvin later advised he had several pounds for sale) | 7 pounds* |
| | Methamphetamine (Jarvin needed to purchase at least 1 pound from phone number ending in 5636 and 1-2 pounds from phone number ending in 5608) | 2 pounds |
| *Added to notate marijuana instead of methamphetamine (actual) | | |

The PSR arrived at a base offense level of 36. (ROA. 354). While attributing at least 10,000 kg but less than 30,000 kg of converted drug weight for the methamphetamine (actual). (*Id*.) *see* U.S. Sent'g Guidelines Manual § 2D1.1(c)(3) (U.S. Sent'g Comm'n 2018) (offense involving at least 10,000 kilograms but less than 30,000 kilograms of CDW). If, however, the attributed narcotics had been treated as methamphetamine (mixture), then its CDW would have resulted in a base offense level of approximately 32. *See* U.S. Sent'g Guidelines Manual § 2D1.1(c)(5) (U.S. Sent'g Comm'n 2018) (offense involving at least 1,000 kilograms but less than 3,000 kilograms of CDW). "A growing body of case law suggests the distinction between actual methamphetamine and methamphetamine mixture is no longer appropriate because it is not based on empirical dat[a], does not serve as an accurate proxy for culpability, and creates unwarranted sentencing discrepancies between methamphetamine and other drugs." *United States v. Celestin*, No. 21-125, 2023 WL 2018004, at *2 (E.D. La. Feb. 15, 2023)(unpublished). Methamphetamine is one of the most harshly punished drugs under the Sentencing Guidelines. *Id.*, at *2 (reiterating that "'[n]o other drug is punished *more* severely based on purity'") (emphasis in original) (quoted citation omitted). In *Celestin*, the court explained:

> 500 grams of actual methamphetamine earns a base offense level of 34, while the same quantities of other drugs result in lower base offense levels: fentanyl (30), cocaine base (crack) (30), heroin (26), and cocaine (24). By contrast, the base offense level for 500 grams of

> methamphetamine mixture is 30-a level more comparable
> to that advised for the same quantity of other major drugs.
> *Id.*, at *4 (quoted citation omitted).

Neither empirical research nor data provide any support for this severe disparity in treatment. *See Id.*, at *3 ("[N]ot only did the Commission not *rely* on empirical dat[a], but 'many courts have noted that no empirical data appears to justify the guidelines' 10:1 ratio.'") (Emphasis in original) (quoted citation omitted). And, purity of methamphetamine is no longer indicative of a person's role or position in a chain of distribution because practically all methamphetamine in the United States today is close to one hundred percent (100%) pure. *Id.*, at *4; see also* U.S. Dep't of Justice Drug Enft Admin., *Drug Enforcement Administration 2025 National Drug Threat Assessment* (May 2025) (PDF) (reporting that DEA sampling of seized methamphetamine "overall purity has remained stable at an average purity near 95 percent across the United States."), https://www.dea.gov/sites/default/files/2025-07/2025NationalDrugThreatAssessment.pdf.

In the Fall of 2023, the United States Sentencing Commission stated its intent to "reduc[e] costs of incarceration and overcapacity of prisons." U.S. Sent'g Comm'n Final Priorities for Amendment Cycle, 88 Fed. Reg. 60536, 60537 (Sept. 1, 2023). Its priorities include examination of federal sentencing practices for methamphetamine trafficking offenses. *Id.* Because (i) "the connection between methamphetamine purity and criminal role is divorced from reality," (ii) the ten-to-

one ratio lacks any empirical basis, and (iii) methamphetamine punishment in comparison to other drugs is so disparate, numerous courts around the country have rejected the methamphetamine Sentencing Guidelines based on policy disagreement. *See Spears v. United States*, 555 U.S. 261, 265-66 (2009) (recognizing that courts may reject or vary from Guidelines based on policy disagreement).

Mr. Summerall urges this Court to hold that his sentence is substantively unreasonable because of the irrationality of the Guidelines governing methamphetamine offenses and the disparate treatment such defendants receive in comparison to defendants committing other, similarly serious drug offenses. *See supra* pp. 28-29 (noting far more severe treatment for methamphetamine (actual) in comparison to fentanyl, cocaine, and heroin); 18 U.S.C. § 3553(a) (establishing need "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"). Although *United States v. Lara*, 23 F.4th 459, 485–86 (5th Cir. 2022), may limit the disparity argument, Summerall preserves it for future review. *See United States v. Devaney*, No. 23-10385, 2024 WL 195555, at *1 (5th Cir. Jan. 18, 2024) (per curiam) (unpublished).

## C. The Court Did Not Adequately Consider 18 U.S.C. § 3553(a) factors in sentencing Mr. Summerall.

The court's failed to adequately consider the § 3553(a) factors, such as Summerall's family support (caregiving for his mother and aunt, ROA. 363) and the

disparity with Tara Summerall's 39-month sentence for a lesser-included offense (ROA. 339). *See* 18 U.S.C. § 3553(a)(6) (avoiding unwarranted disparities); *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009). While the court varied downward from life to 400 months (ROA. 378), it did not sufficiently address these factors, rendering the sentence unreasonable.

## VI. The District Court Erred in Denying a Reduction for Acceptance of Responsibility Under U.S.S.G. § 3E1.1

### A. Standard of Review

This Court reviews the denial of an acceptance-of-responsibility reduction for clear error, giving "great deference" to the district court's assessment, affirming unless the denial is "without foundation." *United States v. Lord*, 915 F.3d 1009, 1017 (5th Cir. 2019) (quoting *United States v. Juarez-Duarte*, 513 F.3d 204, 211 (5th Cir. 2008) (per curiam)).

### B. The District Court Erred by Denying the Two-Level Reduction Under U.S.S.G. § 3E1.1(a)

Summerall objected to the PSR's denial of a two-level reduction under U.S.S.G. § 3E1.1(a), arguing that the June 12, 2023, incident at Stone County Regional Correctional Facility, involving verbal threats to a correctional officer, was uncharged and non-criminal, and thus does not preclude the reduction for demonstrating acceptance of responsibility (ROA. 373). The PSR denied the

reduction, citing continued criminal conduct (ROA. 357, 371–372). This was error, as the incident does not constitute "criminal conduct" under U.S.S.G. § 3E1.1, cmt. n.1(B) (2018), which considers voluntary withdrawal from criminal activity.

Summerall pled guilty to Counts 3s and 5s on May 31, 2023, and provided a statement accepting responsibility, constituting "significant evidence" of acceptance (ROA. 339, 356). *See United States v. Bell*, No. 23-50075, 2025 WL 655802, at *3 (5th Cir. Feb. 28, 2025) (unpublished) (citing U.S.S.G. § 3E1.1, cmt. n.3 (2018)). In *Bell*, this Court vacated a § 3E1.1 denial where a defendant's uncharged, physical altercation did not outweigh his guilty plea and admission. *Id.* Summerall's verbal threats similarly do not negate his acceptance (ROA. 371). Generally, the criminal nature of an inmate's conduct is self-evident when a defendant engages in "assaults" or other exceedingly violent conduct, warranting the denial of acceptance of responsibility. *Id at *3*. *See also, e.g.*, *United States v. Mendez-Becerra*, 745 F. App'x 240, 240–41 (5th Cir. 2018) (affirming denial of acceptance of responsibility where defendant "assault[ed] two fellow inmates in a gang-related altercation"); *United States v. Arteaga-Rios*, 762 F. App'x 177, 177–78 (5th Cir. 2019) (same where defendant "participated in an assault on other inmates"). The district court's finding lacks foundation, as Summerall's plea and statement demonstrate remorse, and the isolated incident does not reflect continued criminality or a "violation of the law." *See United States v. Watkins*, 911 F.2d 983, 985 (5th Cir.

1990). (Defendant's withdrawal from criminal conduct or association includes refraining from any violations of the law).

## C. The Denial of the Additional One-Level Reduction Under U.S.S.G. § 3E1.1(b) Violates Sixth Amendment Principles

The PSR's denial of the additional one-level reduction under U.S.S.G. § 3E1.1(b) constitutes error, as Summerall's timely guilty plea avoided trial preparation, yet no government motion was made (ROA. 339, 357). In *United States v. Tavberidze*, a district court held that § 3E1.1(b) violates the Sixth Amendment by conditioning the reduction on a timely plea and government motion, pressuring defendants to forgo their right to trial to avoid a higher guideline range (769 F. Supp. 3d 264, 271–72 (S.D.N.Y. 2025)). *Tavberidze* distinguished § 3E1.1(a), noting it "arguably justifies" the reduction as a reward for remorse, whereas § 3E1.1(b) penalizes solely for not saving government resources, an impermissible burden on the constitutional right to a jury trial *Id*. at 271, 273 n.2; *See also U.S. Const. amend. VI*; *Ramos v. Louisiana*, 590 U.S. 83, 93 (2020) (jury trial right is fundamental).

While non-binding, *Tavberidze*'s reasoning is persuasive. Summerall's plea on May 31, 2023, avoided trial preparation, satisfying § 3E1.1(b)'s purpose (ROA. 339). Yet, the denial, influenced by the same uncharged verbal threat used against § 3E1.1(a), suggests the government withheld the motion based on prosecutorial discretion, mirroring *Tavberidze*'s concern about undue control (769 F. Supp. 3d at

272). This penalty for post-plea conduct not related to the offense undermines the Sixth Amendment by discouraging defendants from fully exercising their rights, even after pleading guilty.

## D. The Combined Denial Implicates Sixth Amendment, Vagueness, and Separation of Powers Concerns

The combined denial of § 3E1.1(a) and (b) raises multiple constitutional concerns. The PSR's reliance on prosecutorial discretion to deem an uncharged verbal threat as disqualifying for both reductions (ROA. 357, 371) imposes a penalty akin to the trial penalty, inflating the guideline range by three points for conduct unrelated to Summerall's demonstrated remorse (ROA. 356). *Tavberidze* noted that §3E1.1(b)'s structure pressures defendants to plead early, and §3E1.1(a)'s application may be tainted when based on subjective prosecutorial assessments rather than objective remorse (769 F. Supp. 3d at 271–72, 273 n.2). *See Ramos*, 590 U.S. at 93.

Additionally, § 3E1.1(a)'s standard—"clearly demonstrates acceptance of responsibility"—is arguably vague, lacking precise criteria and risking arbitrary enforcement, as seen in the PSR's reliance on an uncharged, non-criminal incident (ROA. 357, 371). *See Johnson v. United States*, 576 U.S. 591, 597–606 (2015) (striking down vague statute for lack of notice and arbitrary enforcement); *Sessions v. Dimaya*, 584 U.S. 148, 160–69 (2018) (same). While *Beckles v. United States*

holds that advisory Guidelines are not subject to vagueness challenges, Summerall preserves this argument for future review, as the subjective standard permits inconsistent applications, undermining due process. 580 U.S. 256, 263–67 (2017).

The denials also implicate separation of powers concerns, as the PSR's reliance on prosecutorial discretion to define "criminal conduct" for § 3E1.1(a) and withhold the § 3E1.1(b) motion encroaches on judicial sentencing authority (ROA. 357). "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'" *United States v. Anderson,* 5 F.3d 795, 801–02 (5th Cir. 1993) quoting *Stinson v. United States,* 508 U.S. 36, ----, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993).

By allowing prosecutors to influence sentencing through the PSR, § 3E1.1(a) and (b) blur the line between executive and judicial roles, contrary to the judiciary's authority to impose sentences. *See Mistretta v. United States,* 488 U.S. 361, 390 (1989). While this Court's deference to § 3E1.1 denials sets a high bar, no binding precedent forecloses these constitutional claims. *See United States v. Najera,* 915 F.3d 997, 1002 (5th Cir. 2019). Summerall preserves these issues for future review, consistent with *United States v. Devaney,* No. 23-10385, 2024 WL 195555, at *1 (5th Cir. Jan. 18, 2024) (per curiam) (unpublished). The denial warrants vacatur for resentencing with the full three-level reduction applied.

# CONCLUSION

For the foregoing reasons, this Court should find that the district court erred in applying the four-level leadership role enhancement under U.S.S.G. § 3B1.1(a), the two-level premises enhancement under U.S.S.G. § 2D1.1(b)(12), the two-level firearm enhancement under U.S.S.G. § 2D1.1(b)(1), and in denying a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, as these errors inflated Mr. Summerall's guideline range (ROA. 355, 357). The Court should vacate his 400-month sentence and remand for resentencing without these enhancements and with proper consideration of the acceptance-of-responsibility reduction. Additionally, if not foreclosed by circuit precedent, this Court should find the sentence substantively unreasonable due to the unwarranted disparity between methamphetamine (actual) and mixture guidelines, inadequate consideration of 18 U.S.C. § 3553(a) factors, including Summerall's family support and the 39-month sentence of codefendant Tara Summerall (ROA. 339, 363), and remand for resentencing to ensure a sentence that is sufficient but not greater than necessary.

SUBMITTED BY:
S/Andrew Arman Miri
Lowrey & Fortner, P.A.
525 Corinne Street
Hattiesburg, MS 39401

# CERTIFICATE OF SERVICE

I certify that on July 10, 2025, the foregoing document was served via ECF to counsel for the Appellee, Assistant U.S. Attorney Adam Stewart, Adam.Stuart@usdoj.gov. I further certify that: 1) all privacy redactions have been made pursuant to 5th Cir. Rule 25.2.13.; 2) the electronic submission is an exact copy of the paper documents pursuant to 5th Cir. Rule 25.2.1; and 3) the document has been scanned for viruses with the latest version of Windows Defender Antivirus and is free of infection. Further I sent a paper copy via regular mail to Mr. Jarvin Summerall.

S/Andrew Arman Miri

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this document contains 6311 words.


2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word 2021 in 14-point Times New Roman.


S/Andrew Arman Miri